I represent John Krakowski. Mr. Krakowski is a pilot with American Airlines and he is a member of the Respondent Union, which is the Allied Pilots Association, which refers to itself as APA and I will refer to it as APA. He is a dues-paying member of that union and he brought this lawsuit because APA expanded the scope of sources of compensation from which it collects dues. It had always historically assessed dues on wages. One percent of every pilot's wage was paid over his dues to the union. In 2017, American implemented on its own a profit-sharing plan, a totally gratuitous effort on its part to share profits with its employees. It wasn't entirely on its own. We have letters of agreement here between the union and American Airlines and I think that's a weakness of your position and I wonder what your response to it is. Yes, sir. The letter of agreement was to simply consent to the payments to the pilots. It refers directly to the profit-sharing plan. Is this the letter of January 18, 2018 or one in October of 16? It's dated October 2016. Okay, great. It is page 198 in the joint appendix. Thank you. And the letter states that the plan is going to control these payments. The plan is at joint appendix page 205. Before you leave that, that letter is signed by the union and by the company, right? Correct. So it's an agreement. It uses the word agree. It does not, Judge. Yeah, it does. It says accepted and agreed on behalf of APA. Okay. It says it confirms our understanding. Yeah, but look at the bottom. It says accepted and agreed. Okay. Which says somebody didn't have to sign that and agree or they could have crossed out the word agreed. Yes, Judge. It does say that. Go ahead. And then you get to the collective bargaining agreement, and the collective bargaining agreement is absolutely clear. Not the plan. The collective bargaining agreement, these letters are part of the collective bargaining agreement itself. Section 1 does define the agreement to include letters of agreement. And so why wouldn't the letters of agreement, if they had to agree, just reading the plain language of that letter, why doesn't this become part of the collective bargaining agreement? Because the letter itself excludes itself from the contract, from the collective bargaining agreement. In saying that the plan controls, we have to examine what the plan says. And the plan very clearly says, there are no acquired rights arising pursuant to this plan. In no event shall the terms of this plan be deemed incorporated into any- What page are you on of the plan? Yes, that's page 207 of the appendix. What, do you know the page of the plan, mine's from the district- Oh, the plan's three. Page three, thank you. Yeah, it's section H. Okay, thank you. In no event shall this plan be deemed incorporated into the collective bargaining agreement, and nothing herein shall be deemed to amend, modify, or otherwise alter any collective bargaining agreement. And so when the letter says these payments are going to be controlled by the plan, and the plan says we're not incorporating any of this into our agreement with UAPA, that takes it out of the contract. But let me ask you this. So let's suppose that there's potentially a conflict between the collective bargaining agreement and the plan. The plan says one thing, it's not part of the collective bargaining agreement. The collective bargaining agreement says the letters of agreement are part of it. Doesn't that at least create a question of whether it is part of the collective bargaining agreement, which itself would create complete preemption? Would prevent preemption? Or would create complete preemption? I don't believe so, Judge. These parties, they're sophisticated parties, and they didn't negotiate for this profit-sharing plan. It was not negotiated, it was not bargained for. Americans just did it as a goodwill gesture. Even the district court called it a gift, and it was, truly. There was nothing that obligated Americans to implement this plan, and the plan itself says we can terminate it whenever we want. There's nothing contractual about it. Yes, APA signed this form authorizing the payments pursuant to the plan, but that doesn't make it part of the collective bargaining agreement, in my opinion, Judge. Okay. Counsel, I'd like to take a step back here to some basic questions. Who is this dispute between? It's between my client, American Pilot, and his union, the Allied Pilots Association. And so it's not between an employee and a carrier? No. And the reason I ask that question is that in order to have operation of the complete preemption doctrine, you've got to have this extraordinary preemptive force of the RLA. And the RLA only applies to disputes between employees and carriers. So how can we have complete preemption here under that language of that statute? Judge, you make an excellent point. I would agree with you. I'm kind of embarrassed I didn't make this point, but you're absolutely correct. And this court- And I would like to have both sides address that issue when it's your time. And this court has held that it takes a narrow view of federal labor law preemption. And I would submit that the district court had a very expansive view of labor law preemption. Well, the State Circuit has an expansive view of complete preemption. But this would seem to go well beyond that. I would agree, Judge. We pled conversion and unjust enrichment in our state court petition in St. Louis County. There's nothing on the face of that petition that brings up a federal issue or a federal question. Well, you know what our cases say. Is it inextricably intertwined? That's what it says. The Railroad Labor Act completely preempts state law claims that are inextricably, I'm quoting, I think we're really quoting the Supreme Court. So is this inextricably intertwined with the terms of the CBA? No, it's not, Judge. Tell me why not. Because there's no provision of the CBA that the jury or court would have to examine to determine whether or not- We just had to look at that whether the issue is not how to construe some provision of the collective bargaining agreement. That's not the issue in this case. The issue- Not even on your percentage rate basis? I know it's your other argument you haven't got to. That's construing the collective bargaining agreement, isn't it? No, it's not, Judge. Not at all? No, there's nothing that our claims would require the jury to get out of the collective bargaining agreement and see if it was violent somehow. That's not our case. Our case is that APA was not authorized by its constitution and bylaws. It was not authorized to accept dues on the profit sharing payment. That's our case, whether or not the union was authorized to accept dues on that. Its constitution is limiting as to what it can receive dues on. That's our case. Well, that again is incorporated in effect by the dues provision of the CBA, because the dues provision says the company will only deduct the ones that are required by the association. Correct. I'm paraphrasing, but that's what it says. According to its constitution and bylaws. Correct. Then the constitution and bylaws are the ones that set the rate. Correct. Magic word rate. Go ahead. One percent on all contractual pay. Okay. So again, there's no provision of the collective bargaining agreement that needs to be interpreted. What needs to be interpreted is APA's constitution. That's what needs to be interpreted, not the collective bargaining agreement. That's why this case is not inextricably tied to the CBA. Plaintiff's claims in the Meyer case, Meyer versus Schnucks, this court held that for there to be RLA preemption, the claim must be grounded in rights established by the CBA. Plaintiff's claim must be grounded in rights under the CBA. Plaintiff's claims are not grounded on any rights conferred under the CBA. And the claim must require the interpretation of some specific provision of the CBA. That's this court's hold. There is no specific provision of the CBA that needs to be interpreted to resolve plaintiff's claims. I think it's just a little slush. I've eaten up my time. It's okay. We believe that this court here is failing to remand the case to the sickness county. And we believe that that should end the analysis of your review. We would ask that you reverse that decision of the district court, send the case back to the district court to vacate its orders, granting the motion to dismiss and motion for summary judgment and further remand the case to circuit court. If the case, if the court continues its review, we would ask that the court reverse the district court's grant of summary judgment on plaintiff's duty of fair representation claim. Counsel, I want to ask about the point on contractual pay. Contractual pay means pursuant to the collective bargaining agreement. I mean, you said I think actually in your second amendment complaint, you said contractual pay means pay received pursuant to the collective bargaining agreement. And so I want to ask you about that. Does that undermine the argument you're making today, which is that this is just unrelated to the collective bargaining agreement? I think my position is completely consistent on that, Judge. Okay, help me with that. This was not contractual pay. This was something outside the contract. This was a gift that the company gave to its employees. The APA did not negotiate for this gift. It was just done as a goodwill gesture on the company's part. Good for it, but it's not contractual pay. There'd be nothing, if let's say that the company said, eh, we're not going to make those distributions. There would be no remedy for that because they reserved to themselves the right to do whatever they want with the plan. So it's not contractual, Judge. And for that reason, the APA was not allowed to collect dues on it. And you don't think to determine whether it's contractual, we need to interpret the CBA? Absolutely, you do not. Okay. The district court didn't cite any provision in the CBA that needs to be interpreted. APA in its motion papers didn't cite any provision in the CBA that needs to be interpreted. The only thing that needs to be interpreted is its constitution. That's it. I'd like to reserve my remaining time. You may, for sure. Thank you. Thank you. Ms. Wong? May it please the court. My name is Alice Wong. I'm here representing Defendant Effa Lee Allied Pilots Association, which I'll also refer to as the APA. In this case, it's undisputed that APA and American Airlines executed two letters of agreement, which, as the judges have pointed out, are defined by the collective bargaining agreement to be part of the collective bargaining agreement. And those letters of agreement enabled pilots, like the appellant, to receive profit-sharing distributions and cash bonuses. These letters of agreement are central to this case. If American Airlines expressly conditioned participation of pilots and that participation for union-represented employees, if American Airlines had offered profit-sharing and bonuses but APA had never signed these letters of agreement or otherwise approved pilot participation by the plan's own terms, the plan defines participant as requiring union approval, then the pilots wouldn't have received any money. No dues would have been sued and a duty of fair representation sued for failing to make its pilots eligible for participation in those plans. Counsel, this is an awfully strange plan because you're making a pretty persuasive argument that it required union approval of the various unions. And it does say that. But then it goes in and says, but it's not part of any collective bargaining agreement. So how do we, like, sort of, there's a lot of tension there. How do we resolve that tension? There is some tension there, Judge. But Section H of the plan just says that the plan is not incorporated into the CBA and it doesn't modify the CBA. But the plan doesn't, isn't what creates the right of plaintiffs to receive anything. The plan just sets forth various terms and conditions. But in order for plaintiffs to have, for the plaintiff, excuse me, to have received any monies, it's the letters of agreement that enabled him to receive anything. So I think the letters of agreement are what are central to this case. Now, Mr. Press claims that nothing needs to be interpreted. We would disagree with that. Section 25 of the CBA is the source of APA's right to collect dues from its members and agency fees from nonmembers. And it is also the source of pilots' obligation as a condition of their employment to pay dues and agency fees on their pay. Furthermore, even if this Court agrees with the plaintiff that, okay, let's put aside Section 25. Section 25 is irrelevant. And the Constitution and bylaws and the phrase contractual pay is what governs. How do you determine what's contractual pay without looking at what the contract defines as the contract? And that's Section 1B2 of the Collective Bargain Agreement. And there's a dispute about that. There's a dispute over the interpretation of Section 1B2. What I'm hearing Mr. Press say is he disagrees that the letter of agreement is part of the contract. The contract says that the agreement includes letters of agreement. And so that provision at the very least— Well, I was going to ask you, the latter argument making it strong. But I think opposing counsel would come back on your former argument about Section 25 and say, what on earth do you have to interpret in Section 25 specifically in this particular case? Sure. Well, Section 25 obligates the pilots to—obligates American Airlines to deduct from the joint appendix. So it requires the company for pilots who have executed a dues checkoff form to deduct from the pay of each pilot covered by this agreement and remit to the association, that's APA, the membership dues and assessments uniformly required by the association. Does the pay of each pilot include profit sharing and cash distributions? Cash bonuses, excuse me? That needs to be interpreted. And again— Then you get back to your latter argument. Right. And then even if you decide that that doesn't need to be interpreted at the very least to figure out what contractual pay is under the Constitution and bylaws, you have to go to Section 1B2 to determine that. I'd like to actually jump to Judge Grass's question. You had asked whether the—you had pointed out that—about the RLA and whether complete preemption applies since this is a dispute between the employee and its union as opposed to the employee and his carrier. And I would disagree that this is—that the RLA does not apply to a dispute between employees and its unions. In fact, the RLA includes a duty of representation and implied into the statute is because the union is the authorized representative of its employees, it must—it RLA does cover disputes between an employee and a—sorry, an employee and a union. But would you agree that the plain text of the statute says carrier and employee, not union? Yes. However, as I mentioned, the courts, including the Supreme Court, have read into the RLA and a duty of unions to fairly represent their employees. Well, but the Sixth Circuit held that the Verville versus International Association of Machinists and Aerospace Workers case, that an airline system board of adjustment does not have jurisdiction over a dispute between a union and a union member. That would seem consistent with a reading of the RLA that only applied to carriers and employees. I'm not familiar with that case, Your Honor, but I think that in this case— You may reply in a 28-J letter to the case, as may the other side. Okay. The—I think the plaintiff could have here filed a grievance against American Airlines citing the Article 25 of the Collective Bargain Agreement. And who would handle that grievance? Well, at the lower levels, I think a pilot can file a grievance himself. And if the— Well, but I was referring to, is there an adjustment board that's been created to handle disputes between unions and union members? Or is it just between employees and air carriers? I think that's really— It's between employees and air carriers. But if— So there's no board of adjustment that could handle this particular dispute? There could have been a board of adjustment to handle a dispute between Mr. Krakowski and American Airlines for incorrectly deducting dues from the pay of the pilot. He could have claimed that you should not—you've incorrectly withheld my dues from this pay and transmitted it to the union. And then if the union refused to advance their— Wouldn't the airline just have dismissed that for lack of privity? I mean, isn't the claim against the union? Yes. If the employee wanted to pursue a claim against the union, he could have, as he did eventually, when permitted to amend his complaint, file a duty of fair representation claim under the RLA against his union. Although I think summary judgment was appropriate in this case as to the DFR claim, because the union's application of dues to profit-sharing and cash bonuses was entirely consistent with its constitution and bylaws, which state that dues are permitted on all contractual pay, including cash profit-sharing and cash bonuses. The constitution and bylaws could have said all contractual pay, excluding cash bonuses and cash profit-sharing, but it did not say that. And plaintiff's reading of the constitution and bylaws to exclude profit-sharing and cash bonuses, which were obtained pursuant to a letter of agreement, which is a contract, from the constitution and bylaws altogether, it strains the text. And this court in the Allen case has held that the court defers to a union's interpretation. Why do we do that? I mean, I've read those cases and obviously there's circuit case law, but I cannot figure out, we don't defer to corporations' interpretation of their own bylaws when we have a case. I can't figure out why we would defer to a union's interpretation of its own bylaws. You know, that's a good question, Judge Rez. I don't know that I'm ready to address that today. Fair enough. You mentioned it, and I know it's not central to the case, but I thought I would follow up with that. Right, but I do know that the Allen case does make that holding that union's reasonable interpretation of its constitution and bylaws. I think we have several of those cases, don't we? Yeah, we have several of them. Can I ask you a question? This is equally off the wall. I noticed that several of these cases in the Supreme Court are an airline pilot's association versus apparently a pilot. There's two or three. Do you know if the issue of preemption was addressed in any of those cases? They're duty of fair representation cases. I don't believe that they were. I think preemption was addressed in the Hawaiian Airlines case, but that wasn't a complete preemption case either. I think that was a regular preemption case, but none of the ALPA, Airline Pilots Association cases, I think, to my recollection, I could be wrong, addressed complete preemption. Thank you. I also wanted to distinguish this case from the cases on which plaintiff principally relies, which is the Meyer and Markham cases. In those cases, the resolution of the state law claims turned on factual questions about, in one case, a union's failure to place an employee in certain apprenticeship training and whether that was motivated by discrimination or retaliation. In the Meyer case, the question was whether the employer's conduct in transferring an employee was motivated, again, by retaliation for him having spoken out about the safety, worker safety. Here, there are no factual questions. The facts are undisputed. The appellant admitted all but one fact in briefing on summary judgment, and the only fact that was legal effect of a provision in the collective bargaining agreement. This case is not like those cases that present factual questions about either an employer or union's conduct or motives. This case involves and requires interpretation and application of the collective bargaining agreement. This case is also not like the Levadas case, which Mr. Press didn't mention today, but it's in his briefing. In that case, the only need to consult the collective bargaining agreement was to determine what the damages were based on the number of days that a payment was late under state law. There was no dispute about if it was a certain number of days late, what the wages would be under the collective bargaining agreement. You just had to look at the table or salary table to determine that. Whereas here, there is a dispute, as we've released, whether letters of agreement that enabled the plaintiff to receive these profit sharing and cash bonuses are part of the collective bargaining agreement and thus constitute contractual pay under the APA constitution and bylaws. Unless there are any further questions, I would close at this point and respectfully ask that the committee be adjourned. The letter of agreement was required to be signed but countersigned by APA to authorize the distributions. There's nothing in the record that tells you why that was required. We know American drafted these documents. They wanted APA's consent before they just made gift payments to APA's members. There's a legal reason why they would do that, but again, it's not part of the prepared and had APA sign, incorporates the profit sharing plan document, again, drafted by American, which says there's nothing about this plan that's contractual. Nothing. Again, we can terminate it whenever we want. If my client would have filed a grievance about the union dues, that would have gone nowhere real quick. There's no process to grieve intra-union dispute. Duty of fair representation. That's the way you grieve an intra-union and that's the case we have here. You bring that claim in district court. Yes. Can you bring that claim in state court? You can. You can. I didn't know that. Thank you. It might get removed, but you can bring it in state court. Okay. Thank you. That gets me to that claim, which was dismissed on summary judgment. The court held, the district court held that these dues were authorized by the constitution and bylaws because of the word including is used in the constitution. It says APA can collect dues on contractual pay, including profit sharing and bonuses. The court said that the district court ruled that the word including is an additive term. It added to contractual pay. It added any profit sharing and any bonuses. That is an improper construction of the word including as held by this court and the United States Supreme Court. It doesn't add, but it recognizes that profit sharing isn't excluded, that it could be a part if the other end is shared present. Correct. If it is contractual pay. Yeah. The district court erred in finding that profit sharing payments are always subject to dues, whether or not it's contractual. Then it erred further in finding that the payments were contractual pay. You need to look no further than APA's own statements to its member, where it issued a report that compared its contract to every other major air carrier's contract. As for profit sharing, it says non-contractual. That was APA's words to its members, acknowledging this was non-contractual. That was an exhibit in response to the summary judgment motion. First of all, we ask that you find that the district court erred in not remanding the case. If you consider the case in its entirety, that you find the district court erred in dismissing the DFR count and the LMRDA count, which we didn't get to. That's my time. Thank you, judges. Thank you, counsel, for the argument. Case number 19-1816 is submitted for decision by the court. And the court will stand in recess for